### ESSEN et ux. v. CITY OF PHILADELPHIA.

(Circuit Court, E. D. Pennsylvania. January 12, 1910.)

#### No. 142.

MASTER AND SERVANT (§ 278\*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE.

An employé in the engineering department of the city of Philadelphia, while standing on the elevated track of a railroad sketching a semaphore beside the track in the course of his employment, was killed by a passing train. He was a man of mature years and experience, and knew that trains were running on the tracks, and the danger therefrom was obvious. It was not shown that any arrangement for warning him of approaching trains was made or requested, and he could, moreover, have stood while sketching on a plank footway on the opposite side of the tracks in a place of safety. *Held*, that the city was not chargeable with any negligence which rendered it liable for his death.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.\*]

At Law. Action by William G. Essen and wife against the City of Philadelphia. On motion to take off nonsuit. Motion overruled.

Charles H. Edmunds, for plaintiffs.

J. W. Catharine and J. Howard Gendell, for defendant.

HOLLAND, District Judge. This suit is instituted by the plaintiffs to recover damages for the death of their son, Willis L. Essen. He was a civil engineer by profession. He had been employed by the city of Philadelphia from 1906 as a draftsman in the grade crossing division, bureau of surveys, up until May 8, 1908, the date of his

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

death. On the morning of the latter date he was standing on the north-bound elevated track of the Philadelphia & Reading Railway at Ninth and Spring Garden streets, in the city of Philadelphia, sketching a semaphore signal, known as "5A," when he was struck by the Buffalo express, which left the Terminal at 8:30 a. m.

The basis of the plaintiffs' claim, as set forth in the statement, is the alleged negligence on the part of the city of Philadelphia in not having provided the deceased "with a reasonably safe place in which to discharge the duties of his employment," and in failing to "furnish and provide him with reasonably safe tools and appliances therefor, and to provide him with the usual and reasonable safeguards incident thereto, and to instruct and caution him relative to the dangers connected therewith."

Upon the trial of the case, it appeared that the semaphore which the decedent was sketching at the time he was killed was near Ninth and Spring Garden streets, on the east side of the elevated structure, about 37 feet wide, upon which the tracks of the Philadelphia & Reading Railway were laid, and on each side of the tracks there was a plank footway about 7 or 8 feet in width, and the space between the footways was occupied by two tracks; the east being used by the north-bound trains, and the west track by the south-bound trains. A picket fence, about 5 feet in height, was located between the north and south-bound tracks from Spring Garden street to a point 87 feet north of Green street, or about 36 feet north of semaphore 5A, opposite which the decedent was shown to have been standing. The semaphore, which he was sketching, was about 25 feet high, and was located on the outside edge of the east footway, about 48 feet north of Green street. The decedent was employed to make a detailed inventory of the railroad property along this elevation, preparatory to the further elevation of the railway tracks of the railway company, in which the city was interested.

It is not claimed the decedent was a man of immature years or inexperienced in his profession. The work he was employed to do was admittedly dangerous work, but all the elements of danger surrounding the work and the places where the work was to be performed were as well known to him as to his employer or his immediate superiors who had charge for the defendant. In fact, his knowledge of the surroundings was superior to those who were not upon the ground, and who could not know what particular position it would be necessary for him to take to perform his work. The decedent could have taken a position on the plank footway on the north of the semaphore, or if it be argued that it was necessary for him to be directly in front of the semaphore in order to sketch it, as the elevated structure at that point was only 37 feet wide, he could have taken his stand on the footway on the west side. He, however, elected to take the most dangerous place near the semaphore to perform his work. He had worked on the elevation the day before, and knew that trains were running. He took a position on the north-bound track, with the picket fence between him and the south-bound track. He was not directed to take this dangerous position by the defendant or its agents, nor had he any assur-

ance that notice of approaching trains would be given. There is no evidence to show that he was left under the impression that he was to be notified of any approaching danger. All the dangers of the surrounding situation were obvious and plain to him when he assumed this position, and there was nothing in the evidence to show that in any particular the defendant was guilty of any negligence whatever. The decedent knew the nature of the work to be performed by him, and saw the surrounding circumstances and the dangers attending it. He made no request for a guard, nor is there any intimation that he had been left under an impression that he would be guarded and warned of any approaching trains. There were no hidden dangers known to the employer with which he was unacquainted. He was a skilled workman, and knew more of the surrounding conditions than the defendant. There is nothing to show that any act of omission or commission on the part of the city in any way contributed to the unfortunate accident.

There being no evidence to establish negligence on the part of the defendant, the motion to take off the nonsuit is overruled